UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

| | |
|---|---|
| RACETECH KY, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| KENTUCKY DOWNS, LLC, | ) |
| Serve: Corey S. Johnsen | ) Case No. 1:15-cv-82-GNS |
| 5629 Nashville Road | ) |
| Franklin, KY 42135 | ) Hon. Judge Greg N. Stivers |
| | ) |
| ENCORE GAMING, LLC, | ) **JURY TRIAL DEMANDED** |
| Serve: Tom Aronson | ) |
| 46 Hill Road | ) |
| Louisville, KY 40204 | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

Plaintiff RaceTech KY, LLC states as follows for its Complaint against Defendants Kentucky Downs, LLC and Encore Gaming, LLC:

### Nature of the Action

1. This is an action for breach of contract, tortious interference with existing contract, unjust enrichment, unfair competition, and misappropriation of trade secrets, arising out of Defendants' use of Plaintiff RaceTech KY, LLC's ("RaceTech KY") confidential and proprietary information and licensed technology, in violation of an Equipment and License Agreement ("the License Agreement") between RaceTech KY and Defendant Kentucky Downs, LLC ("Kentucky Downs"). The License Agreement permitted Kentucky Downs to use certain hardware, intellectual property, and other know-how of RaceTech KY to operate historical horse racing gaming terminals in its Franklin, Kentucky entertainment complex, but expressly

prohibited Kentucky Downs from using licensed technology to develop similar competing products, or enabling a third party to do so.  Immediately upon termination of that agreement in March 2015, however, Kentucky Downs installed its own gaming terminals that it had wrongfully derived and developed from licensed technology of RaceTech KY, and it continues to use confidential and proprietary information of RaceTech KY in furtherance of its gaming operations.  The License Agreement's restrictions on the use of licensed technology and confidential and proprietary information survive the termination of the License Agreement—as a result, Kentucky Downs' breach of the agreement is ongoing.

2. Until March 2015, RaceTech KY and its parent company, RaceTech, LLC (collectively, "RaceTech"), were the only providers of systems and technology for historical horse racing, a means of pari-mutuel wagering in which bettors place bets on previously run horse races through terminals that display historical data and video from those races.  Kentucky Downs licensed this technology from RaceTech KY and offered it to its customers through RaceTech's historical horse racing gaming terminals, under the brand name Instant Racing™.

3. In direct violation of the License Agreement, Kentucky Downs used the technology, hardware, and know-how licensed from RaceTech KY to facilitate and enable the development of another historical horse racing product by Defendant Encore Gaming, LLC ("Encore Gaming"), a company founded and run by one of Kentucky Downs' owners, Rayford Reid.  Immediately after termination of the License Agreement, Kentucky Downs replaced all of the RaceTech terminals at Kentucky Downs with Encore Gaming terminals.

4. Kentucky Downs' President and co-owner, Corey Johnsen, and its General Manager and Senior Vice President, Nicholas Hughes, have contacted other RaceTech customers in efforts to persuade them to adopt Encore Gaming terminals, making it clear that Encore

Gaming and others intend to use the wrongfully developed Encore Gaming historical horse racing platform and RaceTech's operational know-how to pursue and develop other historical horse racing gaming opportunities in Kentucky, Wyoming, and elsewhere, at facilities that currently use RaceTech's historical horse racing gaming terminals and benefit from RaceTech's confidential and proprietary operational information.

5.     As a result, RaceTech KY now seeks to enforce the License Agreement and recover damages and/or restitution from Defendants for breach of contract, tortious interference with existing contract, unjust enrichment, unfair competition, and misappropriation of trade secrets.  RaceTech KY also seeks to enjoin any further use by Defendants of RaceTech KY's confidential and proprietary information.

### Parties

6.      RaceTech KY is a Kentucky limited liability company with a principal place of business in St. Louis, Missouri.  Its members have citizenship in Missouri, Arkansas and Maryland.

7.     Kentucky Downs is a Kentucky limited liability company with a principal place of business in Franklin, Simpson County, Kentucky.  It has citizenship in Kentucky and Tennessee.

8.     Encore Gaming is an Indiana limited liability company with a principal place of business in Boca Raton, Florida.  It has citizenship in Texas, Florida, Oklahoma, Tennessee and Kentucky.

### Jurisdiction and Venue

9.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds

$75,000, excluding interest and costs.

10.     This Court has personal jurisdiction over Kentucky Downs consistent with the U.S. Constitution and the Kentucky Long-Arm Statute, KRS 454.210, because Kentucky Downs is a Kentucky LLC with a principal place of business in Kentucky.  Additionally, RaceTech KY's claims against Kentucky Downs arise out of Kentucky Downs' transacting business in Kentucky, causing tortious injury to RaceTech KY in Kentucky by acts committed in Kentucky, and/or causing tortious injury to RaceTech KY in Kentucky by facilitating and enabling acts committed outside of Kentucky in connection with which Kentucky Downs regularly transacts business and derives substantial revenue from goods used and/or services rendered in Kentucky—e.g., its offering of historical horse racing to customers in Franklin, Kentucky and use of information about historical horse racing obtained from RaceTech KY under the License Agreement.

11.     This Court has personal jurisdiction over Encore Gaming consistent with the U.S. Constitution and the Kentucky Long-Arm Statute, KRS 454.210, because Encore has a consistent and systematic business presence in Kentucky, and because RaceTech KY's claims against Encore arise out of Encore's transacting business in Kentucky, causing tortious injury to RaceTech KY in Kentucky by acts committed in Kentucky, and/or causing tortious injury to RaceTech KY in Kentucky by acts committed outside of Kentucky in connection with which Encore Gaming regularly transacts business and derives substantial revenue from goods used and/or services rendered in Kentucky—e.g., its development of historical horse racing equipment and its provision of that equipment to Kentucky Downs (and its related use of confidential and proprietary information and licensed technology of RaceTech KY obtained through Kentucky Downs).

12.     Venue is proper in the U.S. District Court for the Western District of Kentucky, Bowling Green Division, because Kentucky Downs resides in this District and Division for venue purposes and because a substantial part of the events giving rise to RaceTech KY's claims occurred in this District.

### Historical Horse Racing

13.     Kentucky Downs operates a horse racing track and entertainment complex in Franklin, Kentucky.   In addition to live wagering and off-track betting (i.e., live wagering on horse races taking place elsewhere), the Kentucky Downs complex also offers what is known as "historical horse racing"—a form of pari-mutuel betting that uses electronic devices, or terminals, at which individuals may place bets on horse races that occurred in the past.

14.     Non-parties RaceTech, LLC, the parent company of the plaintiff here, and AmTote International Inc. ("AmTote") developed the first—and until the events complained of in this lawsuit, the only—systems and technology for offering historical horse racing.  In broad outline, AmTote designed and provided the totalisator systems, which are the automated systems that allow for pari-mutuel wagering.  These systems pools wagers from multiple bettors, subtract taxes and certain authorized deductions (takeout and breakage), and then recalculate payoff odds among all winning bettors.  RaceTech, LLC implemented those systems into terminals that offer a variety of different betting formats (i.e., different game types), which allow bettors to place pari-mutuel wagers on historical horse races, utilizing actual past performance information from those races that has been scrubbed of identifying characteristics to permit the bettor to handicap the race prior to placing the bet.  RaceTech, LLC licenses this subject matter to RaceTech KY.

15.     Kentucky Downs offered historical horse racing—pari-mutuel wagering on historical horse races—from September 2011 through March 29, 2015 pursuant to a License

Agreement with RaceTech KY.

## Officers and Owners of Kentucky Downs and Encore Gaming

16.     Corey Johnsen ("Johnsen") is an individual domiciled in Grapevine, Texas. Johnsen is, and at all times relevant to this Complaint has been, the President of Kentucky Downs.  Johnsen is also President of Magellan Gaming, LLC ("Magellan"), a Kentucky limited liability company that markets Encore Gaming's products and services.

17.     Nicholas Hughes ("Hughes") is an individual domiciled in Hendersonville, Tennessee.  Hughes is, and at all times relevant to this Complaint has been, the General Manager and Senior Vice President of Kentucky Downs.  Hughes is also the Managing Partner of Magellan.

18.     Rayford Reid ("Reid") is an individual domiciled in Nashville, Tennessee.  Reid is, and at all times relevant to this Complaint has been, an officer and owner of Kentucky Downs and chief executive officer of Encore Gaming, which Reid founded.

19.     Reid and Johnsen lead a group of investors that has owned a majority interest in Kentucky Downs since 2007.

## The Kentucky Downs-RaceTech KY License Agreement

20.     On August 19, 2011, RaceTech KY and Kentucky Downs executed the License Agreement, under which RaceTech KY granted Kentucky Downs a non-exclusive license to certain "Licensed Technology" for the sole purposes of: (1) operating a pari-mutuel based historical horse racing wagering system (defined in the License Agreement as the "Instant Racing System") at specific locations using terminals supplied by RaceTech KY; and (2) allowing its customers to use the Instant Racing System at those terminals.  The License Agreement is attached as Exhibit A.

21.     The License Agreement defines "Licensed Technology" to include, among other things: (1) the unpatented technical experience, methods, processes, apparatuses, and techniques relating to the use and operation of the Instant Racing System provided to Kentucky Downs under the License Agreement; and (2) the computer programs, procedures, rules, and any associated documentation pertaining to the operation of computer systems in connection with the Instant Racing System provided to Kentucky Downs under the License Agreement.

22.     The License Agreement was subsequently amended by Addendum A, dated August 14, 2013, a Letter Agreement dated August 1, 2014, and the First Amendment to the Equipment and License Agreement, dated and effective as of December 24, 2013.[1]  Addendum A, the Letter Agreement of August 1, 2014, and the First Amendment to the Equipment and License Agreement are attached hereto as Exhibits B, C, and D, respectively.

23.     Whereas Section 5.1 of the License Agreement provided that its initial term was for one year, with an additional one-year renewal term provided for in Section 5.2, the First Amendment to the License Agreement subsequently amended the agreement to provide that the initial term continued to December 31, 2014, further providing that "this Agreement shall continue on a month-to-month basis until terminated" by either party upon thirty days' notice.

**Restrictions on Use of Licensed and Confidential Information in the License Agreement**

24.     Section 3.2 of the License Agreement, entitled <u>Restrictions on Use</u>, provides as follows:

> [Kentucky Downs] agrees to use the Licensed Technology solely for [Kentucky Downs'] business purposes.  Except as expressly permitted by this Agreement and except as reasonably necessary to effect the business objectives and expectations of [Kentucky

---

[1] As the First Amendment was entered into after August 1, 2014, the December 24, *2013* effective date appears to be a typographical error that should read December 24, *2014*.

Downs] according to this Agreement, [Kentucky Downs] shall not

(i) disclose or disseminate the Licensed Technology to a competitor of [RaceTech KY] or [RaceTech, LLC],

(ii) assist or facilitate any third parties to use the Licensed Technology except for [Kentucky Downs'] Customers,

(iii) use the Licensed Technology for the benefit of a third party or to develop a product that is similar (i.e., parimutuel wagering on actual past events) to the Licensed Technology . . . .

25.    Section 5.5(b), regarding the <u>Effect of Termination</u>, provides that upon termination of the License Agreement, "Licensee shall immediately discontinue using the Licensed Technology and the Instant Racing System."

26.    Section 10.1 of the License Agreement, entitled <u>Nondisclosure and Use</u>, provides as follows:

Each Party acknowledges and agrees that Confidential Information of a Disclosing Party is proprietary to the Disclosing Party and constitutes a valuable trade secret and agrees, for itself and its subsidiaries or affiliates and their respective officers, employees, advisers, agents or representatives, that it and they:

(a)    Will retain in strict confidence and not disclose to any other person or entity all Confidential Information received from the Disclosing Party;

(b)    Will not use any Confidential Information of the Disclosing Party for its own direct or indirect commercial or other benefit or in any way other than permitted by this Agreement; and

(c)    Will in all events use at least the same degree of care to avoid disclosure or use of Confidential Information as it employs with respect to its own confidential and proprietary information of like importance.

27.    The License Agreement's Definitions define Confidential Information as:

[A]ny and all information of a proprietary nature which is disclosed by a Disclosing Party to a Receiving Party, including without limitation financial, accounting, and technical data, engineering information, designs, drawings, research and development information, specifications, ideas, concepts, know-

how, sales, handle, customer and supplier information, marketing and business plans, financial projections, and any other information of the Disclosing Party which the Disclosing Party considers to be proprietary or confidential. Unless otherwise agreed, it shall be presumed that all information received by a Receiving Party from a Disclosing Party or learned by a Receiving Party while on a Disclosing Party's premises is considered proprietary and confidential by the Disclosing Party without the necessity of the Disclosing Party specifically marking, confirming in writing or otherwise indicating the confidential nature of such information.

28.     Section 10.5 of the License Agreement provides:

Each Party agrees and acknowledges that any breach of this Section 10 may cause irreparable injury to the Disclosing Party and that the Disclosing Party's remedy at law for any such breach may be inadequate. Accordingly, the Parties agree that, in addition to any other remedies provided for herein or otherwise available at law, temporary and permanent injunctive relief and other equitable relief may be granted in any action brought by a Disclosing Party to enforce the provisions of this Section 10 without the necessity of proof of actual damage.

29.     Section 10.6 provides that the provisions of Section 10 shall survive termination of the License Agreement for five years.

**Defendants' Access to, and Use of, Licensed Technology, Confidential Information, and Trade Secrets**

30.     Pursuant to the License Agreement, RaceTech KY shared Licensed Technology and Confidential Information, as defined in the License Agreement, with Kentucky Downs, Hughes, Johnsen, and Reid. As explained below, Encore Gaming used and is using RaceTech KY's Licensed Technology and Confidential Information provided to Kentucky Downs and the others to develop and operate Encore Gaming's competing historical horse racing platform.

31.     RaceTech KY delivered specifications for how to build out the Kentucky Downs facility to accommodate and optimize the profitability of the 390 RaceTech historical horse racing gaming terminals that were in place at Kentucky Downs. RaceTech KY also delivered

specifications for how to accommodate an additional 110 RaceTech historical horse racing gaming terminals at Kentucky Downs, to bring the total number of terminals to 500. Kentucky Downs used these specifications to build out its facility to accommodate the 500 Encore Gaming terminals now in place at Kentucky Downs.

32.    RaceTech KY trained Kentucky Downs' key management personnel and technical staff, including Hughes, Johnsen, and Kentucky Downs' current Gaming Manager Tristan Yunker, on how to operate and oversee historical horse racing gaming terminals and how to educate patrons regarding historical horse racing. This training included the dissemination of extensive technical information and experience regarding the operation and functionality of the RaceTech historical horse racing gaming terminals, as well as instructions on how to generate, evaluate, and optimize the use of the complex data and reports regarding the networked gaming operations as a whole. The management and technical staff trained by RaceTech KY, including Hughes, Johnsen, and Yunker, remain involved in historical horse racing at Kentucky Downs. RaceTech KY also communicated critical information regarding historical horse racing operations to Reid, including details regarding the benefits of educating patrons and how to do so. These individuals have used and continue to use the training, information, and know-how they received from RaceTech KY pursuant to the License Agreement in operating the Encore Gaming terminals at Kentucky Downs.

33.    RaceTech KY's design specifications included the accommodation of servers required for the operation of the RaceTech historical horse racing gaming terminals, and RaceTech KY installed the servers at Kentucky Downs that were formerly in place there. RaceTech KY operated and serviced those servers until Kentucky Downs' staff had been properly trained by RaceTech KY.

34.     Johnsen toured and inspected the RaceTech historical horse racing operations at Oaklawn Park Race Track (in Hot Springs, Arkansas) and RaceTech's totalisator operations at AmTote's facility in Hunt Valley, Maryland, where he had an opportunity to view and inspect server setups as well as RaceTech's game development operations.  On information and belief, as explained below, Kentucky Downs' President, Johnsen provided information obtained during these visits and inspections of RaceTech's operations to Encore Gaming, which it used to develop the Encore Gaming terminals.

35.     Specifically, Johnsen was accompanied by Joseph Enzminger ("Enzminger") and Jefferson Lind ("Lind"), who are named inventors on Encore Gaming's pending patent application WO 2014/159971.  In the on-site inspections arranged by Johnsen as Kentucky Downs' President, as explained in the next paragraph, Lind and Enzminger also had the opportunity to inspect and learn about RaceTech's server setups and its game development operations and hence were provided access to RaceTech KY's Licensed Technology and Confidential Information.

36.     Johnsen arranged the on-site inspections by presenting Enzminger and Lind to RaceTech KY as potential developers of additional game titles—i.e., different graphical user interfaces and themes for historical horse racing terminals, such as the "Thoroughbred Mania" or "Double Horseshoes" game titles approved by the KHRC to be offered under the Instant Racing™ brand.  Based in part on their being named as inventors on Encore Gaming's patent application, however, Enzminger's and Lind's work was not limited to the development of mere game titles, but extended to the development of  Encore Gaming's competing historical horse racing platform generally.

37.     RaceTech KY developed the proprietary and confidential method to perform the

seed pool adjustment calculation used with the RaceTech historical horse racing gaming terminals at Kentucky Downs in order to meet the requirements set by the Kentucky Horse Racing Commission.   Kentucky Downs has used and continues to use this calculation in operating the Encore Gaming terminals at Kentucky Downs.

38.    RaceTech KY developed the Players Club Rewards program used with the RaceTech historical horse racing gaming terminals at Kentucky Downs, including the layout and location of the servicing desk at Kentucky Downs, the rules of the program, the physical design of the Players Club card and technical information regarding the program's operation.   The Players Club Rewards program was adopted as a form of targeted marketing and has incentivized customer loyalty.   Kentucky Downs has used and continues to use this same player rewards program in operating the Encore Gaming terminals at Kentucky Downs, including the same servicing desk, personnel, rules and Players Club card.

39.    RaceTech KY tracked the geographic and demographic makeup of Kentucky Downs' customers and used that information to advise Kentucky Downs on how to market historical horse racing.  For example, based on this information, RaceTech KY advised Kentucky Downs on how to better target potential customers through tailored, direct mailings, and, conversely, on which marketing approaches would be ineffective.

40.    RaceTech KY provided information about what takeout percentage—the percentage of the overall betting pool that is withheld from the total paid out representing, among other things, the operator's share and taxes—to use at Kentucky Downs in order to optimize customer participation and the profitability of historical horse racing, based on the experience and expertise of RaceTech KY and its affiliates in operating and marketing the RaceTech historical horse racing gaming system at Oaklawn and other licensed facilities.   On December

22, 2014, in response to a request from Tristan Yunker, Kentucky Downs' Gaming Manager, RaceTech KY provided Yunker and Hughes with an Excel spreadsheet with the takeout percentages used for the RaceTech historical horse racing gaming terminals at Wyoming Downs, Oaklawn Park, and Les Bois Park. Kentucky Downs has used and continues to use this information in operating the Encore Gaming terminals at Kentucky Downs. In April 2015, Kentucky Downs used a takeout percentage of approximately 9% on its Encore Gaming historical horse racing terminals, consistent with recommendation provided by RaceTech KY, whereas it had used takeout percentages of 7.5-7.6% throughout 2014, before RaceTech KY provided this information.

**Kentucky Downs' Reid Forms Encore Gaming to Compete with RaceTech KY**

41.     Encore Gaming used the Licensed Technology and Confidential Information described above to develop its competing historical horse racing system.

42.     In a February 12, 2015 press release, Encore Racing Based Games ("Encore RBG") announced "that it is entering the Historic Horse Racing market as a systems, platform, totalizator, and game provider." Encore RBG is an entity affiliated with, and may be a d/b/a of, Encore Gaming. According to their website, Encore RBG and Encore Gaming were founded in 2013.

43.     Until Encore RBG and Encore Gaming entered the market, RaceTech's Instant Racing™ was the only historical horse racing platform.

44.     Reid, who is and at all times relevant to this Complaint has been an officer and owner of Kentucky Downs, is also the founder and chief executive officer of Encore Gaming.

45.     Lind and Enzminger, developers working with Encore Gaming and named inventors in Encore Gaming's pending patent application WO 2014/159971, were also provided access to RaceTech KY's Licensed Technology and Confidential Information in on-site

inspections arranged by Johnsen as President of Kentucky Downs.

46.    Encore Gaming's products and services are being marketed by Magellan. Johnsen, who is and at all times relevant to this Complaint has been President and part-owner of Kentucky Downs, is the President of Magellan.  Hughes, who is and at all times relevant to this Complaint has been General Manager and Senior Vice President of Kentucky Downs, is the Managing Partner of Magellan.

47.    Magellan also operates RaceTech historical horse racing gaming terminal operations at Wyoming Downs and Les Bois Park, Idaho, both of which license their terminals from RaceTech under the same confidentiality obligations that Kentucky Downs agreed to in the License Agreement.

48.    In connection with a March 18, 2015 letter to the Kentucky Horse Racing Commission ("KHRC"), Kentucky Downs submitted an Amended Request for Exotic Wagering on Historical Horse Racing ("the Amended Request") that sought permission from the KHRC to change its provider of historical horse racing systems and technology from RaceTech KY to Encore Gaming.

49.    In the March 2015 Amended Request, Kentucky Downs stated that Encore Gaming had been working with the KHRC for the past ten months (i.e., since approximately June 2014) to obtain approval to offer pari-mutuel wagering through its own terminals, and to provide its own totalisator system for historical horse racing.

50.    On March 23, 2015, Kentucky Downs received permission from the KHRC to install 250 terminals from Encore Gaming for testing.

51.    At the close of business on March 29, 2015, Kentucky Downs deactivated the RaceTech KY Instant Racing™ System.

52.     On February 19, 2015, RaceTech provided Kentucky Downs with the option to enter into one of three proposed alternative agreements for terms of six months, one year or three years, and indicated that unless one of the proposed alternative agreements was entered into, the License Agreement would terminate, effective March 31, 2015.

53.     Kentucky downs did not respond to the February 19, 2015 letter, but rather stated its intentions to use Encore Gaming as its historical horse racing provider in its March 18, 2015 letter to the KHRC, and hence the License Agreement terminated as of March 31, 2015. Kentucky Downs was only able to decline to enter into a proposed alternative license agreement because, by that point, it had enabled Encore Gaming to develop its competing historical horse racing system.

54.     On March 30, 2015, Kentucky Downs removed all of the terminals it had licensed from RaceTech KY.

55.     On April 2, 2015, Kentucky Downs reopened to the public, offering historical horse racing through 500 Encore Gaming terminals.

### The Success of Historical Horse Racing at Kentucky Downs

56.     In the March 18, 2015 letter to the KHRC, Kentucky Downs acknowledged that historical horse racing using RaceTech KY's Instant Racing™ terminals "has been extremely beneficial to the horse industry in Kentucky, resulting in increased purses as well as contributions to the Kentucky Breeders' Incentive Fund."  In 2011, the year in which Kentucky Downs began offering historical horse racing (in September), Kentucky Downs paid a total of $770,000 in purses.  In 2014, Kentucky Downs paid a total of $4,875,000 in purses.

57.     In 2012, the first full year of historical horse racing at Kentucky Downs, the total handle associated with the RaceTech historical horse racing gaming terminals was over $190

million.  For 2014, that figure rose to nearly $300 million.

58.     Over the period of 2012-2014, Kentucky Downs' takeout on historical horse racing rose from approximately $15.5 million in 2012 to $22.6 million in 2014.

59.     Over the period of 2011-February 2015, the Kentucky State Treasurer received $13,324,770 in taxes on pari-mutuel wagers from Kentucky Downs.

## COUNT I
## BREACH OF CONTRACT
### (against Kentucky Downs)

60.     RaceTech KY incorporates by reference paragraphs 1-59 of this Complaint.

61.     RaceTech KY and Kentucky Downs are parties to a contract—namely, the Equipment and License Agreement dated August 19, 2011.

62.     Kentucky Downs breached the Equipment and License Agreement by misappropriating and disclosing RaceTech KY's Licensed Technology and Confidential Information to third parties, including Encore Gaming, in order to allow and enable Encore Gaming to develop a competing platform for historical horse racing.

63.     These actions also constituted a breach of the implied covenant of good faith and fair dealing in the License Agreement.  Any use of RaceTech KY's confidential or proprietary information to enable competition against RaceTech KY in the field of historical horse racing is contrary to RaceTech KY's reasonable expectations under the License Agreement.

64.     As a result of Kentucky Downs' breach, RaceTech KY has been and continues to be damaged, in an amount to be proven at trial in excess of $75,000.  RaceTech KY has been damaged through, among other things, the KHRC's approval of Encore Gaming's competing historical horse racing platform, the subsequent replacement of all RaceTech KY terminals at Kentucky Downs with Encore Gaming terminals, and Kentucky Downs' resulting decision not to renew the License Agreement.

65.     Kentucky Downs' breach also warrants the imposition of preliminary and permanent injunctive relief pursuant to Section 10.5 of the License Agreement and general principles of equity, under which Kentucky Downs should be enjoined from any further use or disclosure of RaceTech KY's Licensed Technology and Confidential Information.

66.     Pursuant to Section 14.9 of the License Agreement, RaceTech KY is also entitled to recover as an element of its costs of suit, and not as damages, reasonable attorneys', consultants', and experts' fees in an amount to be determined by the Court.

**COUNT II**
**TORTIOUS INTERFERENCE WITH EXISTING CONTRACT**
**(against Encore Gaming)**

67.     RaceTech KY incorporates by reference paragraphs 1-66 of this Complaint.

68.     RaceTech KY and Kentucky Downs were parties to a contract—namely, the Equipment and License Agreement dated August 19, 2011.

69.     Encore Gaming, via its founder, chief executive officer and co-owner of Kentucky Downs, Reid, was aware of the License Agreement and its terms, including the restrictions regarding Licensed Technology and Confidential Information, since its inception.

70.     Encore Gaming intended to cause Kentucky Downs to breach the License Agreement by causing Kentucky Downs to misappropriate and disclose RaceTech KY's Licensed Technology and Confidential Information to Encore Gaming.

71.     The actions of Encore Gaming and Johnsen—who was acting in the interests of Encore Gaming and/or his own interest, not on behalf of Kentucky Downs—did indeed cause a breach of the License Agreement, by arranging for, allowing and enabling Encore Gaming to develop a competing historical horse racing platform using Licensed Technology and Confidential Information obtained from RaceTech KY.

72.     As a result of Kentucky Downs' breach of the License Agreement, RaceTech KY

has been and continues to be damaged, including through the KHRC's approval of Encore Gaming's competing historical horse racing platform, the subsequent replacement of all RaceTech terminals at Kentucky Downs with Encore Gaming terminals, and Kentucky Downs' resulting ability to decide not to renew the License Agreement.

73.      Encore Gaming lacked privilege or justification for its interference in light of its awareness of the License Agreement and its terms and its access to RaceTech KY's Licensed Technology and Confidential Information pursuant to the License Agreement, under which Kentucky Downs promised not to compete with RaceTech KY or enable others to compete with RaceTech KY by developing a competing historical horse racing platform.

74.      As a result of these actions, RaceTech KY has been and continues to be damaged, in an amount to be proven at trial in excess of $75,000.

## COUNT III
## UNJUST ENRICHMENT

75.      RaceTech KY incorporates by reference paragraphs 1-59 of this Complaint.

76.      RaceTech KY conferred a benefit on Kentucky Downs at RaceTech KY's expense by providing Kentucky Downs with confidential and proprietary information and technology regarding historical horse racing and the functionality of the Instant Racing™ terminals.

77.      Kentucky Downs subsequently disclosed RaceTech KY's confidential and proprietary information and technology regarding historical horse racing and the functionality of the Instant Racing™ terminals to Encore Gaming.

78.      Kentucky Downs appreciated the benefit conferred upon it by, among other things, using it to implement, market, and operate the Encore Gaming terminals at Kentucky Downs.

79.     Encore Gaming appreciated the benefit conferred upon it by, among other things, using it to develop a competing platform for historical horse racing.

80.     It would be inequitable and unjust to permit Kentucky Downs and Encore Gaming to retain such benefit without payment for its value, given that RaceTech KY shared its confidential and proprietary information and technology with Kentucky Downs with the expectation and understanding that it would not be used for any competitive purposes to benefit third parties, or otherwise adversely to RaceTech KY's interests.

81.     As a result of these actions, Kentucky Downs and Encore Gaming have been unjustly enriched in an amount to be proven at trial in excess of $75,000.

## COUNT IV
## COMMON LAW UNFAIR COMPETITION

82.     RaceTech KY incorporates by reference paragraphs 1-59 of this Complaint.

83.     Defendants have caused injury to RaceTech KY by appropriating for themselves business that rightfully belongs to RaceTech KY—namely, the offering of historical horse racing at Kentucky Downs.

84.     In wrongfully using RaceTech KY's confidential and proprietary information and technology to establish Encore Gaming as a competitor, Defendants have acted with deceptive intent.

85.     Defendants' conduct has caused RaceTech KY to lose business and it has impaired the good will associated with RaceTech's Instant Racing™ platform.  RaceTech KY has been and continues to be damaged, in an amount to be proven at trial in excess of $75,000.

## COUNT V
## MISAPPROPRIATION OF TRADE SECRETS

86.     RaceTech KY incorporates by reference paragraphs 1-59 of this Complaint.

87.     Pursuant to the License Agreement, RaceTech KY and Kentucky Downs agreed

that RaceTech KY's Confidential Information constitutes a valuable trade secret.

88. As alleged in this Complaint, Defendants have misappropriated RaceTech KY's trade secrets through their use of RaceTech KY's Confidential Information to, among other things, develop the Encore Gaming historical horse racing platform and implement, operate, and market the Encore Gaming terminals at Kentucky Downs.

89. As a result of these actions, RaceTech KY has been and continues to be damaged, and Defendants have been unjustly enriched, in an amount to be proven at trial in excess of $75,000.

90. Defendants' conduct has caused and is causing irreparable injury to RaceTech KY, and that harm will continue unless enjoined by this Court. RaceTech KY has no adequate remedy at law.

91. RaceTech KY is entitled to recovery of punitive damages because Defendants' misappropriation of RaceTech KY's trade secrets is outrageous due to their evil motive and/or reckless indifference to RaceTech KY's rights, and because the misappropriation was and continues to be willful and malicious.

92. RaceTech KY is entitled to recovery of reasonable attorneys' fees under applicable law based on Defendants' willful and malicious misappropriation of RaceTech KY's trade secrets.

WHEREFORE, Plaintiff RaceTech KY, LLC respectfully requests that the Court enter judgment in favor of RaceTech KY and against Defendants Kentucky Downs, LLC and Encore Gaming, LLC on all claims and award the following relief:

A. Damages, in an amount to be proven at trial or otherwise;

B. Preliminary and permanent injunctive relief against any further use or disclosure

by Defendants of RaceTech's Licensed Technology, Confidential Information, and trade secrets;

D.      Punitive damages;

E.      Reasonable attorneys' fees, costs, and expenses incurred in this action; and

F.      Any other and further relief that the Court finds appropriate.

**RaceTech KY demands a trial by jury on all claims so triable.**

ENGLISH, LUCAS, PRIEST & OWSLEY, LLP
1101 College Street; P.O. Box 770
Bowling Green, KY 42101
Telephone: 270.781.6500
Fax: 270.782.7782
kames@elpolaw.com


By: *s/ E. Kenly Ames*
    E. Kenly Ames

-and-

Kevin D. Evans (*pro hac vice motion to be filed*)
ARMSTRONG TEASDALE LLP
6400 S. Fiddlers Green Circle, Suite 1820
Denver, CO 80111
Telephone:  720.200.0676
Facsimile:  720.200.0679
kdevans@armstrongteasdale.com

Daniel Sakaguchi (*pro hac vice motion to be filed*)
Zachary C. Howenstine (*pro hac vice motion to be filed*)
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone:  314.621.5070
Facsimile:  314.621.5065
dsakaguchi@armstrongteasdale.com
zhowenstine@armstrongteasdale.com

ATTORNEYS FOR PLAINTIFF
RACETECH KY, LLC