# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION

| | |
|---|---|
| AMTOTE INTERNATIONAL INC.,<br>       Plaintiff<br><br>v.<br><br>KENTUCKY DOWNS, LLC AND<br>EXACTA SYSTEMS, LLC; and MAGELLAN<br>GAMING, LLC,<br>       Defendants | Civil No. 1:15-CV-00047-GNS |
| PARIMAX HOLDINGS, LLC, and<br>AMTOTE INTERNATIONAL INC.,<br>       Plaintiffs<br><br>v.<br><br>KENTUCKY DOWNS, LLC,<br>EXACTA SYSTEMS, LLC; and MAGELLAN<br>GAMING, LLC,<br>       Defendants | Civil No. 1:15-CV-00082-GNS |

## MEMORANDUM OPINION AND ORDER

Plaintiff, AmTote International, has filed a motion to compel discovery of "math sheets" from Defendant, Exacta Systems, LLC (DN 218 in Case No. 1:15-cv-47-GNS and DN 171 in Case No. 1:15-cv-82). AmTote argues that the math sheets are within the purview of the Court's prior discovery order issued on December 11, 2017 (DN 187 in case No. 1:15-cv-47-GNS and DN 194 in Case No. 1:15-cv-82), which ordered all "documents and information" relating to the development and operation of the Exacta system to be produced (Id. at 5134). Exacta has filed a response in opposition (DN 238 in Case No. 1:15-cv-47 and DN 191 in Case No. 1:15-cv-82). AmTote filed a reply (DN 241 in Case No. 1:15-cv-47 and DN 193 in Case No. 1:15-cv-82).

Nature of the Case

This Order relates to two pending cases. In the first, AmTote International sued Defendants Kentucky Downs, LLC; Encore Gaming, LLC n/k/a Exacta Systems, LLC; and Magellan Gaming, LLC for breach of contract, tortious interference with an existing contract, and threatened and actual misappropriation of trade secrets (DN 1 and DN 142 SEALED in Case No. 1:15-cv-47). AmTote asserts its customer, Kentucky Downs, improperly provided proprietary information concerning their historical horse racing gaming system to the other named Defendants, who in turn used that information to develop a competing service (DN 1 and DN 142 SEALED). Kentucky Downs allegedly proceeded to terminate their business relationship with Plaintiffs and used the newly developed system at their facilities in violation of a contract between AmTote and Kentucky Downs. This case was initiated on April 3, 2015 (Id.). See AmTote Int'l, Inc. v. Kentucky Downs, LLC et al., Civil Action No 1:15-cv-00047-GNS (W.D. Ky.).

In the second case, Parimax Holdings sued Kentucky Downs, LLC, Exacta Systems, LLC f/k/a Encore Gaming, LLC and Magellan Gaming, LLC for breach of contract, tortious interference with an existing contract, unjust enrichment, unfair competition and misappropriation of trade secrets (DN 1 and DN 93 in Case No. 1:15-cv-82). The suit stems from Defendant's alleged use of former Plaintiff, RaceTech KY, LLC's, confidential and proprietary information and licensed technology in violation of an Equipment and License Agreement between RaceTech KY and Kentucky Downs (DN 1 and DN 93). This case was initiated on June 29, 2015. See Parimax Holdings, LLC v. Kentucky Downs, LLC et al., Civil Action No 1:15-cv-00082-GNS (W.D. Ky.).

The parties agreed that discovery in the two cases shall proceed jointly (DN 111 in Case No. 1:15-CV-00047-GNS and DN 64 and DN 141 in Case No. 1:15-CV-00082-GNS). A lengthy

discovery process has ensued. AmTote has filed a motion to compel discovery of "math sheets" from Exacta (DN 218 in Case No. 1:15-cv-47-GNS and DN 171 in Case No. 1:15-cv-82). Exacta filed a response objecting to AmTote's motion and requested a hearing on the matter (DN 238 in Case No. 1:15-cv-47 and DN 191 in Case No. 1:15-cv-82). AmTote filed a reply (DN 241 in Case No. 1:15-cv-47 and DN 193 in Case No. 1:15-cv-82).

## Arguments of the Parties

AmTote argues that the math sheets are discoverable documents. They cite this Court's previous Discovery Order (DN 187 in Case No. 1:15-cv-47 and DN 137 in Case No. 1:15-cv-82) which ruled that all documents related to the design, development, and operation of the Exacta system are relevant in this case (DN 218 PageID # 5135 and DN 171 PageID # 2879 in Case No. 1:15-cv-82). AmTote contends the math sheets are within the scope of that order (Id.). They add that production of the math sheets is essential to determining if Exacta's system is derivative of their own and maintain that any risk of proprietary information becoming public is mitigated by the protective orders already in place (Id. at 5138-5139 and 2881-2883).

Exacta argues that AmTote has not met its burden to show that the math sheets are relevant or necessary. They argue that this Court's prior order should not control here because the math sheets were not specifically at issue (DN 238 PageID # 6329). Exacta emphasizes the potential harm it would suffer if its trade secrets or otherwise confidential information were disclosed, especially considering AmTote is a competitor in an industry with few participants. They contend that this risk outweighs any "incremental value" the math sheets may provide AmTote (Id. at 6339-6349). Exacta requests this Court deny AmTote's motion, or in the alternative requests the Court conduct a hearing at which the math sheets can be reviewed by the Court *in camera*. (Id. at 6350).

3

Conclusions of Law

Rule 26(b)(1) of the Federal Rules of Civil Procedure guides the evaluation of any discovery request. The Rule provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . ." Fed. R. Civ. P. 26(b)(1). In assessing whether the discovery is "proportional to the needs of the case," courts should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Id.; Advisory Committee Notes 2015 Amendment.

On December 11, 2017, this Court granted in part Plaintiff's Motion to Compel (DN 187). That order explained, given the nature of the case, that information regarding the design, development, and operation of the Exacta System was relevant:

> The undersigned is cognizant that these requests seek a substantial amount of confidential and proprietary information, but confidential and proprietary information is at the center of this dispute. It is common for courts to order parties to turn over source code when some type of infringement of proprietary information is alleged. Moreover, there is a protective order in place in this case that protects sensitive information (DN 63). Finally, AmTote has convinced the Court via the affidavit of expert Gerry Kitchen that viewing the source code and other schematic and planning materials outlined in the requests above is essential if AmTote is to prove its claims… The undersigned wishes to avoid confusion and future litigation of this issue, and so it is ordered that Exacta shall turn over the source code and other relevant documents pursuant to the conditions set forth in the Order portion of this opinion.

(DN 187 at PageID # 4954-4955). Exacta points out that the Court was not specifically considering the math sheets at issue in the December 11 order (DN 238 PageID # 6329). However, the

undersigned considers the order sufficiently broad to include the subject math sheets, and now specifically deems them relevant to this case.

The movant bears the burden of demonstrating relevance, but that threshold is relatively low. Albritton v. CVS Caremark Corp., 5:13-CV-00231-GNS-LLK WL 3580790, at *3 (W.D. Ky. June 28, 2016). If the material sought appears to be relevant, it is the party resisting production that has the burden to establish that the material is not relevant, or is of such marginal relevance, that it is outweighed by the potential harm of disclosure. Invesco Institutional (N.A.), Inc. v. Paas, 244 F.R.D. 374 (W.D. Ky. 2007) see also R.C. Olmstead, Inc. v. CU Interface, LLC., 606 F.3d 262, 269 (6th Cir. 2010). Exacta fails to meet this burden.

Exacta has rehashed its argument in response to AmTote's initial motion to compel that the scope of discovery should be narrowly constrained to three trade secret claims (DN PageID # 6329). Again, the undersigned will not endorse such a narrow view of this case and reiterates the previous holding that "documents and information relating to the development of the Exacta System and documents relating to the operation of the Exacta System, bear directly on allegations within the complaint" (DN 187 at PageID # 4946). Exacta describes the math sheets as, "comprised of information and data that evidences a theoretical method underlying the payout structure" of Exacta's historic horse racing gambling system (DN 238 PageID # 6340). Information describing how a gambling platform generates payouts to players is undeniably related to the development and operation of the system. Exacta, somewhat incredulously, denies the relevance of this information while simultaneously arguing it is so vital to their product that its disclosure would cause it irreparable harm.

Furthermore, AmTote has convinced the Court that viewing the math sheets is essential if Amtote is to prove its case. The Third Declaration of AmTote's expert, Gerry Kitchen, is

5

compelling (DN 219-1 PageID # 5155). The analogy of an unlabeled diagram is apt. While it may be possible to glean the required information from the source code alone, the task is made unreasonably arduous without supporting documentation, including the math sheets. The Court notes that in its previous Order it sought to "avoid confusion and future litigation of this issue" and ordered Exacta to turn over source code and other relevant documents.

Exacta has not rebutted the relevance of the math sheets with an adequate demonstration of irreparable harm. The parties have entered an Agreed Supplemental Protective Order that will adequately protect the math sheets from disclosure (DN 212). The terms of that order require the math sheets to be marked "expert eyes only" and submitted to a third-party custodian (Id. at 5108-5109). Exacta emphasizes the limited competition in the historic horse racing industry to justify withholding the math sheets, but offers little more than speculation as to why the Agreed Protective Order will not adequately protect their interests. The undersigned recognizes that AmTote is in competition with Exacta, but the math sheets will never be seen by an AmTote employee and their use is limited to expert analysis (DN 212). Exacta's assertion that the Protective Order, to which they agreed, is now inadequate is based on nothing but speculative fear that "humans make mistakes." While that may be true, it is not enough to foreclose relevant evidence from discovery. Exacta's reliance on Viacom Int'l Inc. v. YouTube Inc. 253 F.R.D. 256, 260-61 (S.D.N.Y. 2008) is inapposite. Unlike in this case, the Viacom Court reasoned that the information sought from the defendant was not relevant to the central question of the case.

Exacta requests in the alternative that the Court defer the consideration of AmTote's Motion to Compel until the District Court has ruled on Exacta's pending Motion for Summary Judgment (DN 238 PageID # 6347). The Court declines as it has already addressed this issue and ordered fact discovery to continue in this case (DN 242). Exacta also asks this Court to conduct a

hearing requiring AmTote to make an initial showing of evidence to support its claims (DN 238 PageID 2349).  The undersigned declines this request.  The Court has noted that the math sheets are essential for Amtote's expert to determine whether Exacta's system is derivative of AmTote's.  Therefore, it is unlikely AmTote will be able to present any meaningful evidence until after its expert has reviewed the math sheets.  The Court also declines to conduct an in-camera review of the math sheets.

**IT IS HEREBY ORDERED THAT** Amtote's motion to compel (DN 218) is **GRANTED** in Case #1:15cv-47 and Amtote's motion to compel (DN 171) is **GRANTED** in Case #1:15cv-82.


Copies: Counsel